DAVID J. ROBERTS *v.* STATE OF INDIANA.

[No. 677S416. Filed April 3, 1978.]

*George K. Shields,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Roberts was convicted of four counts at the conclusion of a jury trial in Marion Criminal Court on January 13, 1977: first-degree murder, two counts of kidnapping, and rape. He was sentenced to life imprisonment for the murder and kidnapping counts, and to twenty-one years imprisonment for rape. The crime in question occurred at about 4:00 in the morning of November 14, 1974, when a young woman, driving home with her infant son, was accosted by a gunman at an Indianapolis intersection. The man entered the car and drove away with the woman, eventually raping her twice and leaving her locked in the trunk. Several miles before the woman was left locked in the abandoned car, her child had been left abandoned to die outside in the sub-freezing cold.

Eight errors are asserted by appellant, concerning: (1) the denial of appellant's motion to have the regular judge hear the case, rather than a pro-tem judge; (2) the denial of appellant's motion for appointment of expert witnesses and for funds to employ such investigators; (3) an allegedly insufficient time allowance to appellant for voir dire of prospective jurors; (4) an allegedly racially motivated striking of prospective jurors by the prosecutor; (5) the denial of

appellant's motion to sequester the jury, for reasons of pretrial publicity; (6) the granting of the state's motion in limine, which prohibited appellant from inquiring about the prosecutrix's first child; (7) an alleged denial of the presumption of innocence throughout the trial; (8) the sufficiency of the evidence to support appellant's conviction of the murder of the infant child.

## I.

Appellant first asserts that the trial court erroneously denied his pre-trial motion, which asked that the regular judge hear this case rather than the judge pro tempore. Appellant's motion stated no cause for this change, other than the desire for the regular judge. The judge pro tempore has the same right and duty to perform as the regular judge. Ind. Code § 33-9-2-1 (Burns 1975); *Bryant* v. *State,* (1971) 256 Ind. 587, 589, 271 N.E.2d 127, 128; *Treadwell* v. *State,* (1972) 152 Ind. App. 289, 298, 283 N.E.2d 397, 403. There is thus no merit in this argument.

## II.

Appellant made an oral motion for the trial court to appoint experts to help him investigate and prepare his case, and for funds to employ such persons, which motion was denied. The request was vague and general, but it was apparently meant to be for the services of private detectives. The only authority cited by appellant for this claimed right is a reference to cases dealing with the right to a public defender for indigent defendants. However, there is not a constitutional mandate, under the due process clause, that one accused of a crime be entitled at public expense to any type of expert whose help in a particular case might be relevant. *United States ex rel. Smith* v. *Baldi,* (3rd Cir. 1951) 192 F.2d 540, 547 *aff'd,* (1953) 344 U.S. 561, 568, 73 S.Ct. 391, 395, 97 L.Ed. 549, 556. The constitutional requirements of a fair trial and effective assistance of counsel may require

the appointment of a psychiatrist to make an examination of defendant when an insanity plea is made. *See Bush* v. *McCollum*, (N.D. Tex. 1964) 231 F.Supp. 560, *aff'd*, (1965) 344 F.2d 672. These requirements, however, are fulfilled in proper cases under Indiana law by Ind. Code § 35-5-2-2 (Burns 1975), and there are no further constitutional requirements for the appointment of experts. The trial judge may appoint further experts, of course, but such appointments would be within his sound discretion. No such abuse of discretion is shown in the denial of this appellant's motions, especially since the requests made were for services which could have been performed by appellant's counsel. There is thus no error on this issue.

## III.

After examining the prospective jurors, the trial court announced that each side would have twenty minutes for voir dire. Appellant objected on the ground that this was insufficient time, and makes the same argument on appeal. The record shows that the voir dire here was conducted by the court with the parties permitted to supplement this examination, and with the parties both, in fact, striking several prospective jurors both for cause and peremptorily during their allotted time. The record does not show that appellant tendered any written questions to the court, and appellant does not suggest what areas of inquiry were closed to him or why the time limit was insufficient. The trial court has broad discretionary powers to regulate the voir dire's form and substance, *Bradberry* v. *State*, (1977) 266 Ind. 530, 364 N.E.2d 1183, 1186, and we have upheld procedures such as that employed in the present case, with twenty minute limits on voir dire by the parties, *Hart* v. *State*, (1976) 265 Ind. 145, 352 N.E.2d 712, 716-17. Appellant has demonstrated no prejudice in the conduct of voir dire here, and we find no abuse of the trial court's discretion in this instance.

## IV.

Appellant made a motion to strike an entire panel of veniremen before trial, in view of allegedly racially motivated striking of prospective jurors by the prosecutor, which motion was overruled. The record here shows neither the race of any prospective juror challenged by the state, nor the racial composition of the final jury selected. Further, the challenges involved here were peremptory challenges, for which the underlying reasons need only be known to the party making them. This argument is thus without either foundation or legal merit.

## V.

Appellant next contends that his motion to sequester the jury, in light of past publicity about the case in both local newspapers and broadcast media, was prejudicially and erroneously overruled by the trial court. The trial court did admonish the jurors, before the trial, not to read any newspapers, listen to the radio, nor watch television during their recesses. There is no evidence that this instruction was ever violated, and the presumption is that it was followed. Further, no record has been preserved relative to any actual publicity which was printed or broadcast during the trial which the jurors might have encountered. Separation of a jury during trial is a matter of trial court discretion, and to demonstrate an abuse of this discretion the defendant must make some showing of prejudicial exposure of the jury to trial publicity. *Kincaid* v. *State,* (1976) 265 Ind. 345, 354 N.E.2d 199, 203, *cert. denied,* (1977) 430 U.S. 972, 97 S.Ct. 1660, 52 L.Ed.2d 365; *Morris* v. *State,* (1975) 263 Ind. 370, 375, 332 N.E.2d 90, 93; *Wilson* v. *State,* (1966) 247 Ind. 454, 463, 217 N.E.2d 147, 152. There is thus no error here.

## VI.

Appellant argues error in the trial court's granting of the state's motion in limine, which prohibited appellant from

inquiring about the prosecutrix's first child. This first child was allegedly born out of wedlock, allegedly fathered by the same man as the father of the child victim in this case, and was given away for adoption. The trial court granted the motion in limine on the basis of the rape shield statute, Ind. Code § 35-1-32.5-1 *et seq.* (Burns Supp. 1977). On appeal, it is argued that the above statute unconstitutionally discriminates between the sexes, violates the Sixth Amendment of the United States Constitution by restricting a defendant's cross-examination, and is an unconstitutional intrusion of the legislature into the judiciary.

We find no merit in any of appellant's constitutional arguments. The colloquy between the trial court and defense counsel, concerning the possible admissibility of the excluded evidence under an exception to the statute, demonstrates the basic frivolity of these claims:

THE COURT: Do you think it comes within one of the exceptions?

DEFENSE COUNSEL: Yes.

THE COURT: Under the rape shield statute. All right, which exception?

DEFENSE COUNSEL: Well, I can't think of any technical exception, except—

THE COURT: Well, I mean there are exceptions listed there. I mean it isn't a matter of what's technical or what isn't. It's a matter of what's there or not, isn't it?

DEFENSE COUNSEL: Your Honor, in this particular case, the fact that she had another child born out of wedlock by the same father as the father in question here, and this child was adopted out. We want to go into possible motive of the prosecuting witness in why she would—well, I hate to put it this way, but there is a possibility that she might have wanted to do away with her own child, and especially when it is the same father and the other child was born out of wedlock and it was adopted out.

THE COURT: Well, I think that is precisely the sort of thing that the rape shield law was enacted to prevent.

We agree with the trial court's assessment of appellant's attempted argument. Nothing probative of either the prose-

cutrix's credibility or the appellant's guilt or innocence in this cause was excluded by the court in sustaining the motion in limine relative to this evidence. Appellant was not prevented from proper cross-examination and presentation of evidence, relating to the prosecutrix's relationship with the deceased child in question. The contested statute is no more an unconstitutional discrimination between the sexes than are our rape statutes generally. Neither is it an unwarranted intrusion of the legislature into the judiciary, but it is rather a rational attempt by our legislature to protect a prosecutrix from the sort of baseless, irrelevant, and grotesque harassments as appellant wished to perform here. There is thus no error on this question.

## VII.

Appellant states that he was denied the presumption of innocence throughout the trial. He points to nothing except his own version of the facts of the case to support this assertion. Further, a presumption of innocence instruction was given by the trial court, identical to the one in *Moore* v. *State*, (1977) 267 Ind. 270, 369 N.E.2d 628, 631. There is thus no merit in this argument.

Appellant makes further assertions on this issue which are all factual assertions more properly raised as sufficiency of evidence questions, which we deal with in issue VIII, *infra*. His main contention seems to refer to the sufficiency of the evidence with regard to the identification of him. The facts are that the child's mother viewed a large number of photographs without identifying any of them. Finally, when a photo of appellant was shown to her, she positively identified him. The police suggested another person they suspected, but she summarily rejected that person. She identified appellant in a lineup of seven men by both appearance and voice. Finally, she identified him in court. There is thus no error preserved on this issue.

## VIII.

Appellant finally argues the sufficiency of the evidence to support his conviction of the murder of the infant child. The evidence here shows that appellant was identified in court by the mother of the deceased child, herself a kidnap and rape victim of appellant who was with him for several hours of riding around during these transactions and thus possessing a solid basis for identification. Her testimony was that her child was in the car with appellant when she was locked in the trunk, that the car then moved on, that the child was gone when she later escaped from the abandoned car. The six-months old child was found dead the next day at a different location. Exposure to cold was determined to be the cause of death by the deputy coroner, and evidence at trial established that temperatures were sub-freezing at the time and place the child would have been discarded. We find that this evidence is sufficient to sustain appellant's conviction of first-degree murder.

The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 373 N.E.2d 1103.