Kenneth E. SCOTT, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 73S01–9206–CR–457.

Supreme Court of Indiana.

June 11, 1992.

Kris Meltzer, Bate, Harrold, and Meltzer, Shelbyville, for appellant.

Linley E. Pearson, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

■ This Court has long held that courts may provide indigent criminal defendants with the assistance of experts at public expense upon a showing of good cause. We grant transfer to outline the considerations relevant to a trial court's decision on such a request.

Kenneth E. Scott was convicted of numerous charges stemming from his forced sexual conduct with a young girl and sentenced to 110 years in prison.[1] The Court of Appeals affirmed his convictions. *Scott v. State,* 582 N.E.2d 482 (Ind.App.1991). Scott alleges the trial court erred in failing to furnish him with an expert witness to help him formulate his defense on the issue of intent. He argued he was so intoxicated he could not form the intent to commit the charged crimes.[2]

■ Indiana's practice of providing indigent criminal defendants with the means to defend themselves long predates such requirements as exist under the federal Constitution. *Compare Webb v. Baird* (1854), 6 Ind. 13, *with Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Indiana has long provided expert assistance at the state's expense to indigent defendants. *See Hashfield v. State* (1965), 247 Ind. 95, 210 N.E.2d 429, *cert. denied,* 384 U.S. 921, 86 S.Ct. 1373, 16 L.Ed.2d 442 (1966) (court appointed three physicians to assist defendant in addition to psychiatrists appointed pursuant to insanity statute).[3] Citing our practice and those of other states, the U.S. Supreme Court has held that due process requires the appointment of psychiatric experts, at least when sanity is an issue. *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Principles of fundamental fairness entitle an indigent defendant to an adequate opportunity to present his claims fairly within the adversary system. *Id.* The "basic tools of an adequate defense or appeal" must be provided to defendants who cannot afford to pay for them. *Id.* at 77, 105 S.Ct. at 1093 (quoting *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971)). The question is what constitutes the basic tools of an adequate defense.

■ In exploring the parameters of the Indiana practice, we begin with reference to general statements about criminal defense. The ABA Standards for Criminal Justice provide: "Defense counsel should conduct a prompt investigation of the circumstances of the case and to [sic] explore all avenues leading to facts relevant to the merits of the case and the penalty in the

---

1. He was convicted of: child molesting while armed with a deadly weapon, a class A felony, Ind.Code § 35–42–4–3 (West 1986); criminal deviate conduct while armed with a deadly weapon, a class A felony, Ind.Code § 35–42–4–2 (West 1986); child molesting while armed with a deadly weapon, a class B felony, Ind.Code § 35–42–4–3; attempted child molesting while armed with a deadly weapon, a class B felony, Ind.Code §§ 35–42–4–3, 35–41–5–1 (West 1986); criminal confinement while armed with a deadly weapon, a class B felony, Ind.Code § 35–42–

3–3 (West Supp.1991); and theft, a class D felony, Ind.Code § 35–43–4–2 (West 1986).

2. Scott did not interpose the insanity defense, thus Ind.Code § 35–36–2–2 (West Supp.1991) is inapplicable.

3. Until recently, the expense of such expert assistance was born entirely by county governments. Since 1989, the Indiana Public Defender Commission has had state funds to distribute for this purpose, at least in capital cases. Ind.

event of a conviction." [4] Further, legal representation plans to provide defense services to indigent defendants "should provide for investigatory, expert, and other services necessary to quality legal representation. These should include not only those services and facilities needed for an effective defense at trial but also those that are required for effective defense participation in every phase of the process." [5] These principles are largely carried out day by day by trial court judges. Indiana practice assigns the decisions about expert services for indigent defendants to the trial judge's sound discretion, and these decisions are not overturned absent an abuse of discretion. *See, e.g., Jones v. State* (1988), Ind., 524 N.E.2d 1284; *Graham v. State* (1982), Ind., 441 N.E.2d 1348. It is within the trial court's discretion to determine whether the requested service would be needless, wasteful, or extravagant. *Jones,* 524 N.E.2d at 1350. The trial court is not required to appoint at public expense any expert the defendant believes may be helpful. *Graham,* 441 N.E.2d 1348. The defendant requesting the appointment of an expert bears the burden of demonstrating the need for the appointment. *Kennedy v. State* (1991), Ind., 578 N.E.2d 633, *cert. denied,* —— U.S. ——, 112 S.Ct. 1299, 117 L.Ed.2d 521 (1992). It is not possible to set forth with specificity when a trial court should provide expert services to an indigent defendant. The determination is to be made in the context of each individual case. *Schultz v. State* (1986), Ind., 497 N.E.2d 531. Mindful of this difficulty, we attempt today to enumerate those factors which trial courts should consider in making these decisions.

■ The central inquiries in deciding this issue are whether the services are necessary to assure an adequate defense, *Himes v. State* (1980), 273 Ind. 416, 403 N.E.2d 1377, and whether the defendant specifies precisely how he would benefit from the requested expert services. *Davidson v. State* (1990), Ind., 558 N.E.2d 1077; *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, *cert. denied,* 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900 (1986). A defendant cannot simply make a blanket statement that he needs an expert without some specific showing of what that expert would provide for the defendant.

■ Asking whether a particular service is "necessary" to assure an adequate defense begs the question. In attempting to decide what is necessary, a trial court should determine whether the proposed expert's services would bear on an issue which is generally regarded to be within the common experience of the average person, or on one for which expert opinion would be necessary. *Kennedy,* 578 N.E.2d 633; *Graham,* 441 N.E.2d 1348. If the requested services could be performed by counsel, an expert need not be provided. *Roberts v. State* (1978), 268 Ind. 127, 373 N.E.2d 1103 (no error in refusal to appoint private detective to help investigate and prepare case). An expert need not be appointed if it is improbable that the proposed expert could demonstrate that which the defendant desires. *Jones,* 524 N.E.2d 1284. The appointing of an expert is not necessary when the purpose of the expert appears to be exploratory only. *Hough v. State* (1990), Ind., 560 N.E.2d 511.

Another consideration for the trial court is whether the expert services will go toward answering a substantial question or simply an ancillary one. *Graham,* 441 N.E.2d 1348. For example, if the State's principal evidence linking the defendant to the crime is sufficiently technical that it is commonly the subject of expert testimony, the trial court should strongly consider providing an expert.

Other factors which the trial court may consider follow. The more serious the

---

Code §§ 33–9–13–1 to –4 (West Supp.1991); Ind. Crim.Rule 24.

**4.** ABA Standards for Criminal Justice (Third Edition), Standard 4–4.1(a) (approved 1991) 49 Crim.L.Rep. (BNA) No. 2, at 2017 (April 10, 1991).

**5.** ABA Standards for Criminal Justice (Third Edition), Standard 5–1.4 (approved 1990) 49 Crim.L.Rep. (BNA) No. 2, at 2022 (April 10, 1991).

charge facing the defendant and the greater the severity of the possible penalty, the more reasonable it is to appoint assistants. In a capital case, for example, refusal to provide an expert has been held reversible error. *See Castor v. State* (1992), Ind., 587 N.E.2d 1281 (trial court erred in refusing to appoint expert for defendant in penalty phase when expert made preliminary determination that a death penalty statutory mitigator applied to defendant). Similarly, the more complex the case, the more justifiable assistance by experts would be. If the State is relying upon an expert and expending substantial resources on the case and defendants with monetary resources probably would choose to hire an expert, the trial court should strongly consider such an appointment to assist defense counsel in investigating the same matters, cross-examining the State's expert, or providing testimony.

The cost of the expert services should be evaluated; a trial court need not authorize services bearing exorbitant fees. A court need not appoint an expert if the defendant's request is untimely or not made in good faith. Similarly, a request for an expert whose testimony would not likely be admissible at trial should be viewed with disfavor. If there is cumulative evidence of a defendant's guilt, the need to attack one aspect of that evidence with an expert's services is diminished.[6]

As we noted above, trying to draw a bright line on this subject is a hopeless task. Litigation is as much art as it is science and decisions about how to proceed are very fact-sensitive. The foregoing is not an exhaustive list. Rather, it is an attempt to give guidance to the trial courts which are in the position of both ensuring that defendants receive fair trials and preventing limited resources from being used unnecessarily.[7]

As for appellant Scott, the facts favorable to the verdict are that late one night he ordered the thirteen year old victim to leave her home at gunpoint. He drove her to Indianapolis from Shelby County. During the course of the trip he forced her to engage in sexual intercourse and perform oral sex, and he confined her in a deserted grain bin for a period of time. Scott fell asleep while attempting to molest her again, and the victim was able to escape.

Scott initially filed a motion for funds to hire experts because the trial court had ordered him to produce hair, blood, semen and saliva samples for testing. The motion did not indicate any specific reasons why Scott needed the services of experts, or even what experts he desired. The court held a hearing on Scott's motion. At this hearing, Scott's counsel stated he wanted an expert to educate counsel on the defense of intoxication and possibly to call as a witness in an attempt to rebut evidence that Scott intended to commit the charged crimes.[8] The trial judge directed Scott's counsel to provide the name of the expert and what the range of costs would be. Scott's counsel complied. The court never denied Scott's request, but it did not provide him with expert services.

The trial court did not abuse its discretion when it did not provide the requested expert. Intoxication is a matter which is generally within the common experience of average persons, and the legal and medical

---

6. For secondary sources citing some of these factors, *see* Note, *Right to Aid in Addition to Counsel for Indigent Criminal Defendants*, 47 Minn.L.Rev. 1054, 1076 (1963); Craig Bowman, *The Indigent's Right to an Adequate Defense: Expert and Investigational Assistance in Criminal Proceedings*, 55 Cornell L.Rev. 632, 643–44 (1970); John F. Decker, *Expert Services in the Defense of Criminal Cases: The Constitutional and Statutory Rights of Indigents*, 51 U.Cin.L.Rev. 574, 575, 613 (1982).

7. As this Court has observed: "A wealthy person may hire any number of people to aid in his

defense, needlessly, or on a whim, or foolishly, and the State does not control his expenditures. But, when the court is allocating state funds for the defense of a defendant, it is rational for the court to use discretion in granting or denying the defendant's requests for additional personnel to aid him." *Magley v. State* (1975), 263 Ind. 618, 625, 335 N.E.2d 811, 816.

8. Scott does not argue on appeal that the trial court erred in refusing to appoint other experts he initially appeared to request.

principles necessary to the resolution of Scott's case are within the ken of most attorneys.

The case against Scott was not a complex one. The jury could decide without an expert's testimony whether Scott was too intoxicated to form the intent to commit the crimes in light of his actions before, during, and after the crimes. The State was not relying on expert testimony to prove Scott was capable of forming intent. An intoxication expert was not necessary to ensure that Scott received an adequate defense. The Court of Appeals correctly rejected Scott's other allegation of error. We summarily affirm on that issue. Ind. Appellate Rule 11(B)(3). The judgment of the trial court is affirmed.

DeBRULER, GIVAN, DICKSON and KRAHULIK, JJ., concur.